AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of      )
*(Briefly describe the property to be searched*     )
*or identify the person by name and address)*     )
                                       )
THE CELLULAR TELEPHONE ASSIGNE     )
CALL NUMBER 513-968-0077          )
                                       )

Case No.     1:19-MJ-130

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.    Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.

located in the     Southern     District of      Ohio     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.  This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    ☑ evidence of a crime;

    ☐ contraband, fruits of crime, or other items illegally possessed;

    ☐ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 21 U.S.C. 846 | Conspiracy to Possess and to Possess with Intent to Distribute a Controlled Substance. |

The application is based on these facts:
See Affidavit in Support of Application for Search Warrant.  To ensure technical compliance with 18 U.S.C. 3121-3127, the requested warrant will also function as a pen register order.  I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the [Agency Name].  See 18 U.S.C. 3122(b), 3123(b).

    ☑ Continued on the attached sheet.

    ☑ Delayed notice of   30   days (give exact ending date if more than 30 days:         ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                                  *Applicant's  signature*

                                  Tyler D. Field, Special Agent, ~~FBI~~ DEA
                                  *Printed name and title*

Sworn to before me and signed in my presence.

Date:   2/20/19

City and state:  Cincinnati, Ohio                  *Judge's signature*

                                  Hon. Karen L. Litkovitz, U.S. Magistrate Judge
                                  *Printed name and title*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE ASSIGNED
CALL NUMBER **513-968-0077**

Case No. _____

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-968-0077**, (the "**SUBJECT TELEPHONE 2**"), whose service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.  **SUBJECT TELEPHONE 2** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in

the Indiana Army National Guard and have done so for over sixteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

4.     I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841 and 846 have been committed, are being

2

committed, and will be committed by Oscar TORBERT, David KEMP, and other as-yet known and unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE 2** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **SUBJECT TELEPHONE 2** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

7.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.     The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of David KEMP, Oscar TORBERT and other as yet unidentified subjects regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846.

9.     In July 2018, a DEA confidential source (CS #1[1]) told me that David KEMP is using an apartment near 1751 Bleecker Lane, Cincinnati, Ohio as his (KEMP's) stash location. In September 2018, CS #1 also informed me that TORBERT told CS# 1 that he (TORBERT) was providing KEMP with heroin/fentanyl.

10.     On October 24, 2018, at approximately 4:55 p.m., I observed TORBERT and an unidentified male standing on Bleecker Lane in the area of what was reported as KEMP's stash

---

[1] CS# 1 has been charged with a felony drug-trafficking violation and is cooperating for consideration in sentencing. CS# 1 has previously been able to provide information that has been independently corroborated by law enforcement officers and your affiant considers CS# 1 reliable.

3

location. Consequently, I believe that TORBERT was meeting with KEMP in furtherance of their heroin/fentanyl trafficking conspiracy.

11.    In December, 2018, I met with a Cincinnati Police Department confidential source (CS# 2[2]) who told me that CS# 2 could purchase ounce quantities of fentanyl from KEMP for approximately $2,600 per ounce. CS# 2 also stated that KEMP maintains a stash location in the 1700 block of Bleecker Lane. CS# 2 said that during December 2018, KEMP provided CS# 2 with approximately a gram of suspected fentanyl[3] as a "tester." CS# 2 said that KEMP told CS# 2 that it was fentanyl. KEMP also told CS# 2 that KEMP currently had kilogram quantities of fentanyl. CS# 2 described the fentanyl as white with a yellow tint. CS# 2 stated that KEMP currently uses multiple telephone numbers, to include 513-499-5078 (**SUBJECT TELEPHONE 1**.)

12.    On January 9, 2019, the Honorable Stephanie K. Bowman, United States Magistrate Judge in the Southern District of Ohio, signed search warrants authorizing the acquisition of precise geo-location information concerning telephone numbers 513-629-0062 and **SUBJECT TELEPHONE 1**. Through physical surveillance, I was able to confirm that telephone numbers 513-629-0062 and **SUBJECT TELEPHONE 1** were being used by TORBERT and KEMP respectively.

---

[2] CS# 2 was charged with a felony drug-trafficking violation and is cooperating for consideration in the disposition of the charges. CS# 2 has previously been able to provide information that has been independently corroborated by law enforcement officers and your affiant considers CS# 2 reliable.

[3] CS# 2 was not expecting KEMP to give CS# 2 fentanyl during their encounter. Unsure of what to do with the fentanyl, CS# 2 discarded the fentanyl. As a result, investigators were not able to submit the suspected fentanyl for analysis.

13. In January 2019, through TORBERT's own negligence, CS#1 was provided the opportunity to access the telephone associated with telephone number 513-968-1042[4], which was in TORBERT's possession. CS#1 took advantage of that opportunity on self-initiative, taking pictures of some of the text messages and phone calls sent to/from 513-968-1042 and subsequently providing it to agents, confirming the telephone number for 513-968-1042. Agents also observed multiple text messages that we believe relate to the distribution of controlled substances. For example on January 14, 2019, an unknown male using telephone number 513-954-1196 (hereinafter referred to as UM1196) sent a text message to 513-968-1042 that read "Nephew your cousin Mike might want two of them Zips that is." Based on my training, experience, and discussions with other law enforcement officers/agents, I am aware that the word "zip" commonly refers to ounce-quantities of controlled substances. Consequently, I believe that in this text message, UM1196 was telling TORBERT that a third individual wanted two ounces of controlled substances from TORBERT.

14. On January 30, 2019, I reviewed subscriber and call records for 513-968-1042. According to subscriber records, 513-968-1042 was subscribed on January 13, 2019 to "Johnny Montana" at 1234 amain st, Cincinnati, Ohio. Based on my training, experience, and discussions with other law enforcement officers/agents, I am aware that drug traffickers often use recently activated telephones subscribed to fictitious names and addresses to avoid detection from law enforcement.

15. According to call records, between November 29, 2018 and January 22, 2019, **SUBJECT TELEPHONE 1** communicated with TORBERT's telephone 513-629-0062

---

[4] According to call records, the last communication to/from 513-968-1042 occurred on January 23, 2019. Consequently, I believe that TORBERT is not currently actively using 513-968-1042.

approximately 235 times. During this time period, TORBERT's telephone 513-629-0062 was **SUBJECT TELEPHONE 1**'s fifth most frequent contact. Upon review of call records for **SUBJECT TELEPHONE 1**, I observed that the last contact between **SUBJECT TELEPHONE 1** and TORBERT's telephone 513-629-0062 occurred on January 22, 2019. I also observed that beginning on January 17, 2019, **SUBJECT TELEPHONE 1** began contacting **513-968-0077 (SUBJECT TELEPHONE 2.)**

16.    On February 18, 2019, I received subscriber and call records for **SUBJECT TELEPHONE 2** from T-Mobile US, Inc. pursuant to an administrative subpoena. According to subscriber records, on January 7, 2019 **SUBJECT TELEPHONE 2** was subscribed to "Johnny Montana" at 1234 amain st, Cincinnati, Ohio, which was the same subscriber information used to subscribe TORBERT's telephone number 513-968-1042. Consequently, I believe that **SUBJECT TELEPHONE 2's** subscriber name and address are fictitious. Based on my training, experience, and discussions with other law enforcement officers/agents, I know that drug traffickers often use recently activated cellular telephones using fictitious subscriber information in order to avoid detection from law enforcement.

17.    According to call records, between January 17, 2019 and February 5, 2019, **SUBJECT TELEPHONE 1** communicated with **SUBJECT TELEPHONE 2** approximately 174 times. During this timeframe, **SUBJECT TELEPHONE 1** was the second most frequent contact of **SUBJECT TELPHONE 2**. Furthermore, of the 15 unique contacts to **SUBJECT TELEPHONE 2,** approximately nine, or 60%, of these contacts have also been in contact with TORBERT's telephone.

18.    Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that **SUBJECT TELEPHONE 2** was subscribed using the same

subscriber information as TORBERT's telephone 513-968-1042, and my knowledge that approximately 60% of **SUBJECT TELEPHONE 2**'s contacts have also been in contact with TORBERT's telephone number 513-629-0062, I believe that **SUBJECT TELEPHONE 2** is being used by TORBERT.

19.     Based on CS# 1's statements that TORBERT was supplying heroin/fentanyl to KEMP, my belief that TORBERT met with KEMP at KEMP's suspected stash location in October 2018, CS# 2's statements that KEMP is a heroin/fentanyl trafficker, my belief that TORBERT communicated with UM1196 regarding the distribution of two ounces of controlled substances, my knowledge that KEMP, using **SUBJECT TELEPHONE 1**, previously communicated with TORBERT on 513-629-0062, my knowledge that KEMP, using **SUBJECT TELEPHONE 1**, is the second most frequent contact with **SUBJECT TELEPHONE 2**, and my belief that TORBERT subscribed **SUBJECT TELEPHONE 2** using fictitious subscriber information, I believe that KEMP and TORBERT are utilizing the **SUBJECT TELEPHONES** in furtherance of their drug trafficking conspiracy.

20.     In my training and experience, I have learned that T-Mobile US, Inc. is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e.,

antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

21.     Based on my training and experience, I know that T-Mobile US, Inc. can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available.

22.     Based on my training and experience, I know that T-Mobile US, Inc. can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile US, Inc. typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

23.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

8

24.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

25.    I further request that the Court direct T-Mobile US, Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US, Inc..  I also request that the Court direct T-Mobile US, Inc. to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile US, Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

26.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

27.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 20 day of February 2019

_____
Honorable Karen L. Litkovitz
United States Magistrate Judge

10

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-968-0077**, whose wireless service provider is T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of T-Mobile US, Inc., including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

## I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile US, Inc., T-Mobile US, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile US, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile US, Inc.'s services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 841(a)(1) and 846 involving Oscar TORBERT, David Kemp and other as yet unidentified subjects.

## AO 106   Attachment

See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by The Drug Enforcement Administration. *See* 18 U.S.C. §§ 3122(b), 3123(b).

I declare under penalty of perjury that the foregoing is true and correct.

February 20, 2019
DATE

*s/Karl P. Kadon III*
AUSA Karl P. Kadon III (#0009324)
Assistant United States Attorney